# IN THE COURT OF APPEALS FOR THE FIFTH CIRCUIT OF THE UNITED STATES, AT NEW ORLEANS

**GARCIA GLENN WHITE**           *

**Death row inmate 999205**

V                                *  CAUSE _____

                                 #This is a capital case Execution Oct 1#

**THALER,**

**Director, TDCJ**               *

**Institutional Divsion**

## Motion requesting permission to file a subsequent writ application under Sec. 2254 from Cause 4:2-Cv-01805 in the Southern District of Texas, Houston Division

In *Ex parte Elizondo*, the seminal Texas case which made actual innocence reviewable under the Fourteenth Amendment, the two young boys who admitted they testified falsely against a relative, took over a decade to recant and obtain relief for their lies about sexual abuse. *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996) In a similar fashion, gaining the trust of a family who had spent decades learning to hide and mask the intellectual disability of their loved one would normally take years. In the case at hand, although the efforts at obtaining the information needed to make a claim of intellectual disability began promptly after

the *Moore v. Texas* cases, it took years to obtain the affidavits from family and friends who had spent their whole lives protecting their family member against the stigma of being retarded. See *Moore v. Texas*, 581 U.S. ___(2017) and *Moore v. Texas* , 586 U.S. _____ (2019).

Frankly the State of Texas was the final catalyst for their willingness to come forward by setting a death date for next week, on October 1st, 2024. This overarching reluctance is not simply the advocates' opinion – it is born out in both research and the experienced opinions of forensic psychologists as well as mitigation specialists who have provided affidavits for the same. [See affidavits of Dr. Hupp, forensic psychologist, Gina Vitale, mitigation specialist, and Nicole Van Toorn, mitigation specialist, attached to 11.071 writ filed in the Texas Court of Criminal Appeals]

Although the affidavits could not have been obtained until and unless the participants were willing [just as one cannot obtain a recantation until the conscience of the liar finally bears fruit], there remains a simpler and more problematic argument for the Office of the Attorney General and the State of Texas. Intellectual disability is a status; it does not change over time. In that, it is unique even among other exemptions from execution, such as incompetency to be executed or juvenile age. See *Roper v. Simmons*, 543 U.S. 551 (2005); *Panetti v. Quarterman*. 551 U.S. 930 (2007).

When the Supreme Court of the United States decided that the evolving standards of decency required that those who had lessened moral culpability deserved greater protection from the ultimate punishment, as in the *Atkins v. Virginia* case, [see *Atkins v. Virginia*, 531 U.S. 304 (2002)] they created a categorical exemption for those who suffered from intellectual disability. They did the same for juveniles. See *Roper v. Simmons*, **Id**. The presumption that the insane or the incompetent should not be executed as it would be morally offensive to execute those who did not understand what was happening to them has also existed in our law for some time now. See *Ford v. Wainwright,* 477 U.S. 399 (1986); *Panetti v. Quarterman.* **Id**. Yet the matter of intellectual disability is strikingly different from all three of those categories.

The truth is that competency and sanity ebb and flow. They can sadly result in a permanent inability to grasp the real world, but for most are a condition which can be combatted through medication. A juvenile will age, so that while they may be immune from execution for a crime committed at a young age, that does not remain true as they age and supposedly gather maturity and wisdom. Only intellectual disability, still called in some quarters by its old name of mental retardation, does not change. It never improves. There is no "Flowers for Algernon" moment where the person with the disability sheds it and returns to normal intelligence. While that is tragic, it also underlines the permanence and distinct

difference of a claim of Intellectual disability. Since it never changes, and is present at an early age, it cannot possibly be time barred at all.

The very nature of this disability means it is immoral to execute someone with it. That is a restriction on our actions as a society, not a "waivable right" for those with the disability. It is a judicially created exemption from the timelines of the Anti-Terrorism and Effective Death Penalty Act. Otherwise, it is a meaningless right which could never be exercised as those who have it cannot advocate for it, and those who advocate for it must of necessity conduct a legal archaeological dig to prove such a case.

Moreover, because almost all medically based cases since the *Atkins/Moore* cases will involve retrospective analysis of defendants' behavior for many years, a claim of intellectual disability on a practical level cannot be time barred as discovering and uncovering such evidence must pre-date *even the basic fundings requests for an expert to do testing under Ake v. Oklahoma.* See *Ake v. Oklahoma*, 470 U.S. 68 (1986). The Supreme Court did not intend to create a right without a means of implementing it.

Mr. White has obtained DNA evidence of a third-party male yet unidentified at the crime scene which the Court of Criminal Appeals in Texas will not permit the defense to develop via writ or a new punishment trial in order to present to a death

jury. There is also strong new scientific evidence for a defense of cocaine psychosis which shows Mr. White was likely suffering from a psychotic break during his actions that could have provided the sentencing jury with a reason to sentence him to life rather than death. Both issues have <u>never been presented</u> to a sentencing jury. Both issues would likely give such a jury a reason to impose a sentence other than death, or in the modern case a plea for a term of less than life imprisonment with the local District Attorney.

Likewise, the time for patience in terms of due process for those who are innocent of the death penalty under *Sawyer v. Whitley* has passed. See *Sawyer v. Whitley*, 505 U.S. 333 (1992). The Supreme Court recognized this when it stayed the recent case of *Gutierrez v. Saenz*, 21-70009 (5th Circuit 2024) in July of this year. This case has striking similarities to Mr. Gutierrez' case. In his case, Mr. Gutierrez sought the right to DNA testing which could arguably lessen his moral culpability for the death sentence. Mr. Gutierrez's stay illustrates the fact that the Supreme Court has found it likely Mr. Gutierrez would prevail on the underlying merits of his case; one cannot logically deprive Mr. White of the chance to present evidence he already has if one is granting Mr. Gutierrez the chance simply to seek such evidence. Such an action would violate due process, both procedural and substantive, in terms of the Eight Amendment. The CCA is currently interpreting both TCCP 64 and Article 11.073 as applying new scientific evidence to ONLY guilt or innocence. In

fact, the CCA cited its interpretation of "conviction" in TCCP 64 in Gutierrez's case as part of its rationale for its interpretation of "conviction" in Article 11.073. In the context of innocence of the death penalty they have sadly left this area unexplored and undeveloped. That cannot continue nor can it withstand an Eighth Amendment due process analysis.

Finally, under *Gregg v. Georgia,* 428 U.S. 153 (1976) and meaningful appellate review, the Court of Criminal Appeals appears to have created a new "weighing" sentencing scheme under its decision in *Ex parte Andrus*, NO. WR-84,438-01 delivered on May 19, 2021 on remand from the Supreme Court in *Andrus v. Texas,* 18-9674 *Andrus v. Texas* (06/15/20). Cert was denied over a dissent by Justice Sotomayor. The undersigned do not question the right of any state high criminal court to interpret their death statute as they see fit; however, such a "weighing" system flies in the face of the traditional holdings of the current Texas scheme pursuant to Article 37.071 of the TCCP and the CCA's own prior holdings. Mr. Andrus was in the process of re-litigating this when he lost hope and took his own life in January of 2023. This is the first case which a defendant requests that federal courts examine this Andrus holding [which the dissenting Justice in *Andrus*, J. Sotomayor, accurately characterized as both a violation of the Supreme Court's order and a "weighing" of the aggravating [future danger evidence] and the mitigating evidence] under the second Special Issue in Texas re mitigation. None of

these issues have been raised and were it not for the unfortunate result in Mr. Andrus' case, these questions regarding how such a system in Texas would function would likely have been answered earlier.

Wherefore, premises considered, the Applicant White seeks permission from this Circuit to proceed with a subsequent writ on these matters. He would show they are either not time-barred or are all based upon recent factual and case law changes. He would ask that the Court issue a stay of execution now scheduled for Oct 1, 2024 after 6pm, permit the subsequent writ to proceed into federal district court, and order any additional relief to which it believes the Applicant would be entitled to.

Respectfully submitted,

/s/____Patrick F. McCann___

__/s/__Julia Hubbard Bella____

700 Louisiana, Ste 3950

Houston, Texas 77002

832-390-2731/writlawyer@outlook.com

And at 200 S. Tenth St. Richmond, Texas 77469

732-757-9799/julia@jbellalaw.com

Counsel and co-counsel for White

### Certificate of Service

I hereby affirm that a true and correct copy of the foregoing was delivered to the opposing counsel of the State of Texas via electronic means on the day of filing.

__/s/___Patrick F. McCann__, Counsel of record

### Certificate of compliance

I hereby affirm that this motion complies with requirements of the FRAP and the Fifth Circuit local rules, that it is was done in 12 point font or greater using MS Word, and that it is less than maximum limit of pages with a word count of 1518 words.

__/s/__Patrick F. McCann____

### Certificate of conference

I hereby affirm that the opposing counsel for the State of Texas would be opposed to this request.

/s/___Patrick F. McCann___

# VERIFICATION

| STATE OF TEXAS | § |
| --- | --- |
| | § |
| HARRIS COUNTY | § |

I, Patrick F. McCann, being duly sworn, under oath, hereby says I am the attorney for Garcia Glenn White, and know the contents of the above motion and, according to my belief, the facts stated herein are true.

_____
Patrick F. McCann
Petitioner

SUBSCRIBED AND SWORN TO before me on the 24th day of September, 2024.

_____
NOTARY PUBLIC



PATRICIA ANN NOWAK
My Notary ID # 126607126
Expires March 29, 2026